IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL HILL | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-1642 |
| | § | |
| SERGEANT K. SENG | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Michael Hill, complaining of Sergeant K. Seng, and for cause of action will respectfully show unto the Court as follows:

## I.
## PARTIES

1. Plaintiff Michael Hill is a resident of Dallas County.

2. Defendant Sergeant K. Seng, is an individual residing in Dallas, Dallas County, Texas and is a police officer with the City of Dallas Police Department and may be served at his place of employment at the Dallas Police Department located at 6969 McCallum Blvd., Dallas, Texas 75252 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

## III.
## FACTS AND ALLEGATIONS

5. On June 20, 2018, Plaintiff Michael Hill had his Fourth Amendment rights violated when Defendant Sergeant K. Seng of the Dallas Police Department unlawfully detained Mr. Hill and unlawfully arrested him.

6. Mr. Hill was pulled over by Defendant Seng into the parking lot of an Auto Zone on suspicion of a traffic infraction regarding his registration.

7. Upon making contact with Mr. Hill, Defendant Seng discovered that Mr. Hill, in fact, had valid registration for his vehicle.

8. Still, Defendant Seng requested Mr. Hill turn over his driver's license so that Defendant Seng could run Mr. Hill for warrants.

9. Mr. Hill handed Defendant Seng his driver's license as requested, although he was no longer under suspicion of a crime.

10. Defendant Seng determined that Mr. Hill was clear of any warrants.

11. However, upon returning to Mr. Hill's vehicle, Defendant Seng told Mr. Hill that he did have warrants.

12. Mr. Hill was extremely confused and was worried he would be arrested.

13. Defendant Seng then told Mr. Hill that he was joking about the warrants but pointed out how easily he could scare Mr. Hill.

14. **Defendant Seng then told Mr. Hill he was free to leave**.

15. Mr. Hill was upset that Defendant Seng would abuse his authority and power as a police officer by trying to scare Mr. Hill.

16. Since Mr. Hill had been told he was **free to leave**, Mr. Hill decided to record the officers to find out why there were harassing him.

17. Mr. Hill turned on his cell phone video camera, began recording, exited and stood next to his vehicle.

18. Mr. Hill began video recording Defendant Seng and the other two Dallas police officers present, Officers M. Kirkland and T. Williams.

19. The officers waived at Mr. Hill when they saw they were being recorded.

20. Inexplicably, Officer Williams said for the video, "He was on Harry Hines messing with prostitutes."

21. This statement was completely unfounded and could only have been said for the purpose of trying to make Mr. Hill look bad on his video.

22. This is evidence that these officers would do or say whatever they wanted during their interaction with Mr. Hill without regard for the truth or the law.

23. Then to make a record for his video, Mr. Hill asked the reason he was pulled over by Defendant Seng.

24. In response, Defendant Seng hurriedly walked back to Mr. Hill's vehicle and demanded to see Mr. Hill's driver's license again.

25. At no time between being told he was free to leave and Defendant Seng demanding to see his driver's license for a second time had Mr. Hill done anything that could have been considered a crime. Mr. Hill had simply exited his vehicle, which was parked in a public parking lot, began filming the officers with his cell phone, and asked why he was pulled over.

26. Mr. Hill asked why he needed to give his driver's license to Defendant Seng for a second time.

27. Defendant Seng told Mr. Hill, "I want to give you something to make sure you don't get pulled over again."

28. Thus, Defendant Seng was not requesting Mr. Hill's identification as part of a lawful arrest.

29. Additionally, Mr. Hill had already given Defendant Seng his identification upon request during the previously concluded traffic stop.

30. Mr. Hill asked Defendant Seng what would happen if he did not give him his driver's license for a second time.

31. Defendant Seng responded that he would arrest Mr. Hill for "failure to ID."

32. Defendant Seng was referring to Texas Penal Code Section 38.02 – Failure to Identify.

33. According to Section 38.02 of the Texas Penal Code, "[a] person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." Tex. Penal Code Ann. § 38.02(a)

34. It is clear that at the time that Defendant Seng was requesting Mr. Hill's driver's license and threatening to arrest him for failing to identify himself, that Mr. Hill was not under arrest, had not committed a crime, had already turned over his identification during the previously concluded traffic stop, and had been told he was free to leave.

35. Thus, not turning over his driver's license would **not** have been a violation of Texas Penal Code section 38.02 and would not have given Defendant Seng probable cause to arrest Mr. Hill.

36. Defendant Seng either knew his statement about arresting Mr. Hill for failure to identify was a misstatement and contrary to law, or Defendant Seng made the

statement because he is incompetent and does not know the law that he purportedly was trained to enforce.

37. Mr. Hill refused to turn over his driver's license for a second time.

38. Defendant Seng told Mr. Hill, "wait right there."

39. Thus, Defendant Seng was detaining Mr. Hill for a second time.

40. This was an illegal detention.

41. Defendant Seng did not have probable cause or reasonable suspicion that any crime had been committed, was being committed, or was about to be committed in order to justify this second detention.

42. Defendant Seng then went back to his vehicle.

43. Mr. Hill asked if he could leave or if he was being detained.

44. Officer Williams informed Mr. Hill he was being detained.

45. Mr. Hill asked why he was being detained.

46. Officer Williams told him to ask her Sergeant and pointed to Defendant Seng.

47. Mr. Hill stated, "I want to leave."

48. Mr. Hill asked, "Can I go home."

49. Officer Williams did not respond.

50. Officer Kirkland did not respond.

51. Mr. Hill asked to talk to Officer Williams supervisor, referring to Defendant Seng.

52. Mr. Hill began to walk over to ask Defendant Seng why he was being detained, since the other officers could not give him an answer.

53. Officer Williams grabbed Mr. Hill and told him to head back to his car.

54. Defendant Seng exited his vehicle and told Mr. Hill to go wait by his car.

55. Mr. Hill asked why.

56. Defendant Seng told Mr. Hill, "because I told you."

57. Defendant Seng began walking toward Mr. Hill.

58. Mr. Hill retreated backward away from Defendant Seng.

59. Defendant Seng told Mr. Hill to go wait by his car again.

60. Mr. Hill told Defendant Seng, "I'm ready to go home, tell me why I can't go home."

61. Defendant Seng told Mr. Hill, "you are being detained right now."

62. Mr. Hill asked why he was being detained.

63. Defendant Seng reached for his handcuffs and walked toward Mr. Hill to place him in handcuffs.

64. Defendant Seng and Officer Williams grabbed Mr. Hill to place him in handcuffs.

65. Mr. Hill did not resist arrest.

66. Defendant Seng pulled his taser and placed it against Mr. Hill's back.

67. The officers placed Mr. Hill in handcuffs and took Mr. Hill to the Dallas County Jail where he was incarcerated for three days.

68. After placing Mr. Hill in handcuffs, Officer Kirkland told Mr. Hill "you do to much of this" and used her hand as a puppet to create a mouth talking. Officer Kirkland was saying that Mr. Hill was being arrested because he was talking too much.

69. This was an illegal arrest.

70. Mr. Hill was charged with Resisting Arrest in case MA1856793.

71. The charge of Resisting Arrest in case MA1856793 was dismissed on January 15, 2019.

72. The Motion to Dismiss Prosecution stated, "After an investigation by Assistant District Attorney, Kingsley Ewenike, it has been determined that this case should be dismissed in the interest of justice."

73. Defendant Seng had no right, authority, or reason to seize Mr. Hill after he ordered him to back up. Defendant Seng's touching and seizure of Mr. Hill's person was unnecessary and unlawful.

74. Mr. Hill do not resist arrest.

75. Defendant Seng was at all times acting under color of law.

## IV.
## CAUSES OF ACTION

### Illegal Detention and False Arrest
### (Fourth Amendment pursuant to 42 U.S.C § 1983)

76. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

77. No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

78. Defendant Seng deprived Plaintiff of his constitutionally protected right to be free from unreasonable searches and seizures under the Fourth Amendment.

79. A false arrest claim under 42 U.S.C § 1983 requires a showing of (1) willful detention, (2) without consent, (3) without authority of law, and (4) the deprivation of a constitutional right.

80. There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause.

81. To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered.

82. Defendant Seng intentionally detained Plaintiff without a warrant, without Plaintiff's consent, and without any legal justification. Plaintiff did not consent to his confinement and was conscious of it.

83. Defendant Seng willfully detained Plaintiff by (1) telling Plaintiff he was being detained after refusing to hand over his driver's license for a second time and (2) by restraining Plaintiff in handcuffs and having him taken to jail.

84. Plaintiff did not consent to being detained by being told he was not free to leave for not handing over his driver's license a second time.

85. Plaintiff did not consent to being detained by being restrained in handcuffs and taken to jail.

86. Defendant Seng did not have reasonable suspicion or probable cause to support detaining Plaintiff after the traffic stop had been concluded.

87. Defendant Seng did not have probable cause to detain plaintiff in handcuffs and then have him taken to jail.

88. Defendant Seng did not have authority of law to detain Plaintiff after the traffic stop had concluded.

89. By knowingly and intentionally detaining Plaintiff after the traffic stop had concluded without consent, without reasonable suspicion, without probable cause, and without legal justification, Defendant Seng deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

90. As a result of the illegal detentions, Plaintiff suffered injuries.

91. As a result of the illegal detentions, Defendant deprived Plaintiff of his civil, constitutional and statutory rights and is liable to Plaintiff under 42 U.S.C. § 1983.

92. Plaintiff was damaged as a result of Defendant Seng's wrongful acts.

## V.
## PUNITIVE DAMAGES

93. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

94. When viewed objectively from the standpoint of Defendant Seng, at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

95. As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Seng, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

96. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

97. Victims of unreasonable searches and seizures may recover damages directly related to the invasion of their privacy. *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999).

98. Plaintiff's injuries were a foreseeable event.

99. Those injuries were directly and proximately caused by the illegal detention and arrest of Mr. Hill in violation of Mr. Hill's constitutional rights.

100. As a result, Plaintiff is entitled to recover all actual damages allowed by law.

101. Plaintiff contends Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights.

102. Thus, Plaintiff is entitled to punitive damages against Defendant Seng.

103. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a. Emotional distress, torment, and mental anguish in the past and future;

    b. Deprivations of his liberty.

104. Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

105. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

106. Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ *Scott H. Palmer*
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF